1
2
3
4
5
6
7
8               **UNITED STATES DISTRICT COURT**

9               **EASTERN DISTRICT OF CALIFORNIA**

10

11   AGUEDA VALENCIA,                  )   Case No.: 1:14-cv-1330-BAM
                                       )
12                  Plaintiff,         )   **ORDER REGARDING PLAINTIFF'S**
                                       )   **SOCIAL SECURITY COMPLAINT**
13          v.                         )
                                       )
14   CAROLYN W. COLVIN, Acting         )
     Commissioner of Social Security,  )
15                                     )
                    Defendant.         )
16   _____ )

17

18                      **INTRODUCTION**

19          Plaintiff Agueda Valencia ("Plaintiff") seeks judicial review of a final decision of the

20   Commissioner of Social Security ("Commissioner") denying her application for supplemental security

21   income ("SSI") pursuant to Title XVI of the Social Security Act.[1]  The matter is currently before the

22   Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge

23   Barbara A. McAuliffe.  Having carefully considered the parties' briefs, as well as the entire record in

24   this case, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by

25   substantial evidence in the record and based upon proper legal standards.  Accordingly, the Court

26   affirms the Commissioner's determination.

27   _____

28   [1]       Pursuant to 28 U.S.C. § 636(c), the parties consented to conduct all further proceedings in this case before the
     Honorable Barbara A. McAuliffe, United States Magistrate Judge. (Docs. 7, 9).

                                        1

1

**FACTS AND PRIOR PROCEEDINGS**[2]

2        Plaintiff filed an application for supplemental security income benefits on July 29, 2010.  AR

3   17. Plaintiff's application alleged disability beginning July 15, 2010.   The Commissioner initially

4   denied Plaintiff's claims on December 27, 2010, and upon reconsideration on June 17, 2011.  AR 17.

5   Plaintiff filed a timely request for a hearing and on September 4, 2012, Plaintiff, represented by James

6   Witherow, testified at the hearing. AR 17. On November 21, 2012, Administrative Law Judge ("ALJ")

7   Sharon L. Madsen denied Plaintiff's application. AR 23. After the Appeals Council denied review, this

8   appeal followed. AR 1.

9        **Background**

10       Plaintiff was born in Mexico on July 8, 1965, has a sixth-grade education, and is a Spanish

11   speaker.  AR 31-32.  While living in the United States, Plaintiff worked as a fruit sorter for six months

12   and worked as a packager at a metal stamping facility. AR 33.  In 2008, at the age of 43, Plaintiff

13   suffered a cerebrovascular accident (a stroke) resulting in residual left extremity weakness.  AR 222.

14   In January 2009, a cardiac stress test revealed that she was at "moderate cardiac risk" and her

15   "functional capacity was limited by exertion."  AR 217.  Plaintiff also suffers from recurrent painful

16   headaches and persistent left arm and left leg weakness.  AR 212, 292, 358.

17       Treatment notes indicate multiple visits to the hospital due to complaints of headaches, chest

18   pain and left side weakness. In June 2010, Plaintiff reported to the Emergency Room with "pinching

19   pain" on the left side of her head.  AR 220. She reported to the Emergency Room physician that her

20   "symptoms began approximately one month ago when the left side of her body 'gave out' while she

21   was walking with her walker" and that since that time she experienced swelling and weakness on her

22   left side.  AR 220.  The treating physician noted that "this patient is well known to me" and that "she

23   has a history of complex migraines that have gone on for some time." AR 200. The Emergency Room

24   doctor further stated:

25            [Plaintiff] has had an extensive workup…and they have never been able to find any
             abnormalities in her lab work. I think that it is very likely that this patient is suffering
26            from somatization disorder and at this point in time, I think that is probably the most

27

28   ---
[2]        References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

likely diagnosis. She does have an appointment to follow up with the neurologist who is following her for her headaches for which she continues to take Topamax and she has that appointment on 6/30/2010. I think she should keep that appointment. I would welcome their evaluation, their input and would be happy to follow any recommendations they would have

AR 220.

On July 15, 2010, Plaintiff returned to the Emergency Room with chest pain radiating to her left back and shoulder with left arm numbness.  AR 222.  An echocardiogram indicated cardiac disease/symptomatic bradycardia and Plaintiff had surgery to implant a dual chamber pacemaker in her chest.  AR 8-9, 13.

In September 2010, Plaintiff continued to seek treatment for left-sided weakness and headaches.  AR 358, 366, 368.  In November 2010, she was admitted to the hospital "with profound left-sided weakness."  AR 368.  A treating physician's exam "showed 0/5 strength on left limbs and lack of pain/temp/fine-touch/proprioception modalities…[b]ased on neuro[logical] exam patient seems to have a left sided CN v VII and XI deficit. Location of deficits cannot be explained by an anatomical lesion."  AR 376.  A treating psychiatrist diagnosed Plaintiff with "conversion disorder" noting that "[t]he presentation points to conversion disorder, but as to what is the underlying stressor remains undetermined."  AR 377.  Additional medication was prescribed and Plaintiff was later discharged after being hospitalized for three days. AR 368.

The following month, on December 2, 2010, State agency physician Dr. K. Quint considered the medical evidence and opined that Plaintiff had the residual functional capacity to perform light work with frequent postural involvement, but no more than occasional climbing of ladders, ropes, and scaffolds.  AR 227-29. Dr. Quint explained that Plaintiff's bradycardia was stable with the pacemaker. AR 230.

From February 2011 through April 2011, Plaintiff attended eight physical therapy sessions. AR 424.  The sessions improved Plaintiff's ability to transfer from sitting to standing, increased her ability to ambulate slowly with an assistive device, and ability to balance.  AR 424.  Plaintiff was discharged with her treatment goals partially met; educational goals met; and recommendations to continue with her home exercise program.  AR 424.

On June 4, 2011, Plaintiff underwent a complete psychiatric evaluation with Dr. Mary Lewis. AR 435-40.  A mental status exam revealed good eye contact, cooperative behavior, and a pleasant attitude.  AR 437.  Plaintiff exhibited normal speech, normal thought processes, and euthymic mood. AR 437.   Plaintiff was fully oriented, not significantly impaired in intellectual functioning, and demonstrated satisfactory attention and concentration.  AR 437-38.  Based on her examination, Dr. Lewis did not diagnose Plaintiff with any psychiatric impairment and opined that Plaintiff would have no mentally related functional impairments. AR 439-40.

On June 16, 2011, State agency physician Dr. R. Tashjian reviewed the evidence of record and opined that Plaintiff's mental impairments were non-severe.  AR 442, 452.

In September 2011, Plaintiff was again hospitalized.   Her Emergency Room physician described an "acute episode of left-sided weakness which was preceded by a headache in a patient with known history of complicated migraine headaches and psychiatric disorder." AR 544. During her stay, progress notes indicated that "[p]er neurology there was convincing data that perhaps this was a malingering patient versus conversion disorder."  AR 541.

In January 2012, Plaintiff presented to the hospital with "left-sided weakness" determined to be "due to chronic complex migraines vs. old [cerebral vascular accident] ("CVA")," chronic headache, and chest pain.  AR 524, 530.

Plaintiff again reported to the hospital on May 2012, with "acute onset of left-sided weakness" (AR 516) and again of June 25, 2012, with complaints of chest pains while putting away groceries. Plaintiff was discharged in improved and stable condition with the assessment that the pain was likely musculoskeletal in origin. AR 487.  A month later on July 31, 2012, Plaintiff was admitted to the hospital with severe migraines and left side weakness.  AR 458. A neurologic exam noted Plaintiff was unable to shrug her left shoulder, had decreased sensation in her left arm, no sensation in her left leg, little strength and no reflexes in the left extremities.  AR 460.  The treating physician noted that a CVA was indicated, with left-sided weakness.  AR 464.

On August 28, 2012, Plaintiff was hospitalized with significant headache, nausea, vomiting and left-sided weakness and numbness.  AR 624, 631.  Upon physical exam, there were neurological findings of "diminished sensation left side" and "upper and lower extremities bilateral start off as

equal strength then suddenly the right increases in strength and the left decreases in strength."  AR 624, 631.  On August 30, 2012, Plaintiff was discharged with a diagnosis of "complex migraine vs. CVA" and a plan to admit her for a further work up and a neurologic evaluation.  AR 632.

**Hearing Testimony**

At the administrative hearing before ALJ Madsen on September 4, 2012, in Fresno, California, Plaintiff appeared and testified with the help of an attorney and a translator.  Impartial Vocational Expert ("VE") Susan Allison also appeared and testified. AR 27.

Plaintiff was born on July 8, 1965, and was forty-seven years old at the time of her hearing. AR 30. At five feet three inches tall, Plaintiff weighs 190 pounds and is left handed. AR 30.  Plaintiff is not legally married and she has two children ages 14 and 11. AR 31.  Plaintiff has a sixth grade education and did some of her schooling in Mexico before coming to the United States.  AR 32.

Plaintiff testified that in performing her activities of daily living, she needs help bathing and dressing, that she completed very few household chores because she experienced fainting spells, that she did no shopping, and that her daughters did the cooking. AR 32.  Plaintiff stated that a typical day included watching television and taking naps. AR 32-33.

When asked about her work history, Plaintiff explained that her past work included sealing packed wheelchair parts and sorting fruit.  AR 33.  Plaintiff also worked part-time at Fresno Unified doing "yard duty" which included watching children during their breaks.  AR 34.

When asked about her medical issues, Plaintiff alleged that her impairments included daily severe headaches, fainting spells, chest pains, weakness in her left side that caused her to fall, swollen feet, and minimal left eye vision.  AR 35-38.  Plaintiff felt she could stand for three minutes at a time, walk for ten minutes at a time, and sit for thirty minutes at a time.  AR 38.  Plaintiff testified that based on her impairments she could lift and carry three to five pounds, but that she was always dropping things.  AR 38.

Thereafter, the ALJ elicited the testimony of vocational expert Susan Allison. AR 40. The VE testified that Plaintiff's past relevant work included fruit sorter and hand packager.  AR 40. The ALJ then asked the expert to assume a hypothetical individual with Plaintiff's age, education, work experience, who could lift/carry 20 pounds occasionally, 10 pounds frequently, sit/stand/walk six

1    hours in an eight-hour work day with occasional climbing of ladder, ramps, scaffolds, and no

2    concentrated exposure to heights AR 41.  The VE stated that such an individual could still perform

3    Plaintiff's past relevant work as a hand packager and fruit sorter.  AR 41.  The ALJ reduced the

4    hypothetical to sedentary with the ability to use a cane as necessary, and the VE testified that Plaintiff

5    could perform her previous box sealer job as she actually performed it in the past.  AR 41.  Finally, the

6    ALJ asked, and the expert confirmed, that her testimony was consistent with the information found in

7    the Dictionary of Occupational Titles.  AR 41-42.

8            **Medical Record**

9            The entire medical record was reviewed by the Court.  AR 207-637.  The medical evidence

10   will be referenced below as necessary to this Court's decision.

11           **The ALJ's Decision**

12           Using the Social Security Administration's five-step sequential evaluation process, the ALJ

13   determined that Plaintiff did not meet the disability standard.  AR 17-23.  More particularly, the ALJ

14   found that Plaintiff had not engaged in any substantial gainful activity since July 29, 2010.  AR 19.

15   Further, the ALJ identified bradycardia status post pacemaker placement, migraine headaches,

16   conversion disorder, and obesity as severe impairments. AR 19. Nonetheless, the ALJ determined that

17   the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments.  AR 20.

18           Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual

19   functional capacity ("RFC") to perform light work including lifting and carrying twenty pounds

20   occasionally and ten pounds frequently; Plaintiff could stand and/or walk for six hours in an eight hour

21   day; and sit for six hours in an eight hour day with occasional climbing of ladders, ropes and scaffolds,

22   and no concentrated exposure to heights AR 20.  The ALJ found that Plaintiff is able to perform past

23   relevant work as a fruit sorter and hand packager. AR 23. The ALJ therefore found that Plaintiff was

24   not disabled under the Social Security Act.  AR 23.

25                           **SCOPE OF REVIEW**

26           Congress has provided a limited scope of judicial review of the Commissioner's decision to

27   deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this

28   Court must determine whether the decision of the Commissioner is supported by substantial evidence.

42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the decision if the ALJ applied the proper legal standards and made findings supported by substantial evidence. *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 2002).

## DISABILITY STANDARD

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of no less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant bears the burden of proof to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In her opening brief, Plaintiff contends that the ALJ: (1) erred in evaluating the severity of her impairments; (2) improperly rejected the opinions of her treating physicians; (3) failed to establish a foundation as to her past relevant work, and (4) failed to consider all of her impairments in the residual functional capacity finding. (Doc. 13).

///

///

///

**DISCUSSION**[3]

**1.      The ALJ Properly Evaluated Plaintiff's Impairments at Step Two**

Plaintiff first challenges that ALJ's findings at step two of the sequential analysis.  Plaintiff argues that while the ALJ found that her conversion disorder—a psychiatric disorder—was a severe impairment, the ALJ later found that Plaintiff's "mental problems are non-severe."  According to Plaintiff, the ALJ made a contrary finding when she concluded that Plaintiff suffers from a severe psychiatric disorder while simultaneously concluding that her mental impairments were non-severe. Plaintiff's argument is unpersuasive.

As an initial matter, Plaintiff's arguments concerning the "severity" of her specific mental impairments are moot. The severity requirement is a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); see *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 416.921 (definition of a severe impairment). Here, the ALJ did not dispose of Plaintiff's conversion disorder impairment as "non-severe."  Rather, the ALJ found that Plaintiff satisfied the severity requirement as to her conversion disorder, proceeded with the disability analysis, and considered all of the functional limitations established by the reliable evidence, not just the ones identified as severe. *See* 20 C.F.R. § 416.945(a)(2); AR 18 ("In making [the RFC finding], the undersigned must consider all of the claimant's impairments, including impairments that are not severe"). Thus, Plaintiff's assertion that certain impairments were considered "non-severe" is immaterial; it is enough that the ALJ considered the functional limitations established by the reliable medical evidence, regardless of severity. *See Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007)

Secondly, while Plaintiff argues that the ALJ erred in finding that she did not have a severe mental impairment, at step two of the sequential analysis, the ALJ found Plaintiff's conversion disorder was a severe impairment. This was not an inconsistent finding.  A conversion disorder is "a condition in which you show psychological stress in physical ways."[4] (Retrieved on Nov. 9, 2015 from

---

[3]      The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

[4]      *See* Diseases and Conditions: Conversion Disorder, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/conversion-disorder/basics/definition/con-20029533?reDate=07022016  (last accessed February 2, 2016).

http://www.mayoclinic.org/diseases-conditions/conversiondisorder/basics/definition/con-20029533).

Given the nature of a conversion disorder, it was not error for the ALJ to find that Plaintiff suffered severe physical RFC limitations as a result of her conversion diagnosis, but not severe mental impairments. AR 19.  Plaintiff fails to cite to any evidence that her conversion disorder resulted in significant mental functional limitations that would support her argument that the ALJ erred. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability" because the "claimant bears the burden of proving that an impairment is disabling"), *citing Sample v. Schweiker*, 694 F.2d 639, 642-43 (9th Cir. 1982) (same). For those reasons, the ALJ did not err at step two of the sequential evaluation.

### 2.      The ALJ Properly Evaluated the Medical Evidence

Second, Plaintiff challenges the ALJ's disability finding for failing to credit her treating physicians' opinions.  (Doc. 13 at 8). More specifically, Plaintiff argues that the ALJ erred in rejecting evidence from her treating physicians that questioned whether her left-sided weakness was a result of her conversion disorder.  AR 458, 500, 530.  According to Plaintiff, the ALJ's decision "is utterly lacking in setting forth any explanation as to the basis for rejecting Plaintiff's treating physician's opinions." (Doc. 13 at 8).  In response to Plaintiff's argument, the Commissioner contends however, that the ALJ properly considered the weight of the medical evidence.

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Magallanes*, 881 F.2d at 751; *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). The ALJ may accomplish this task by setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes*, 881 F.2d at 751. He must offer more than merely his conclusions. He must set forth his interpretations and explain why they, rather than the doctor's, are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988). On the other hand, if the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

The Ninth Circuit, however, has also held that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957; *see also Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, a treating or examining physician's opinion based on the plaintiff's own complaints may be disregarded if the plaintiff's complaints have been properly discounted. *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Moreover, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." *Andrews*, 53 F.3d at 1041; *Magallanes*, 881 F.2d at 751; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985).

Based on a review of the record, the Court concludes that the ALJ adequately evaluated the medical record. While Plaintiff argues that the ALJ erred in rejecting her treating physicians' opinions regarding her conversion disorder and her resulting left-side weakness, the ALJ credited the medical evidence of Plaintiff's conversion disorder. AR 21. The ALJ found that Plaintiff's conversion disorder was a severe impairment, but explained that despite her condition Plaintiff was still able to return to her past relevant work. Accordingly, contrary to Plaintiff's argument, the ALJ did not reject the evidence regarding the existence of her conversion disorder. Further, Plaintiff's treating physicians' comments that Plaintiff's symptom etiology is uncertain and attribution of her symptoms to conversion disorder is, in and of itself, neither significant nor probative as it does not indicate any specific functional limitations that the ALJ needed to include in her RFC finding. *See e.g. Ukolov v.*

*Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (portions of treatment records purporting to describe "objective" findings, including "weakness in the distal lower extremities" and a positive Romberg test, did not establish a medically determinable impairment because the doctor's "observations did not include a diagnosis or a finding of impairment").

Instead, the ALJ reasonably relied on the evidence of the state agency reviewing physicians that despite her complaints, Plaintiff was capable of light work. Further, although Plaintiff reported several impairments, various doctors, including Plaintiff's treating physicians found her only partially credible. The ALJ noted that even Plaintiff's treating physicians noted that "there was convincing data that perhaps this was a malingering patient versus conversion disorder." AR 23; AR 541-42. The ALJ was therefore entitled to rely on the opinions of the independent physicians' which were consistent with the medical record and demonstrated that Plaintiff could perform a restricted range of light work. AR 21.

### 3.    The ALJ's Step Four Finding Was Not Error

Plaintiff next argues that the ALJ erred in identifying her work as a fruit sorter and hand packager as past relevant work for the purposes of the step four analysis, because Plaintiff did not perform her fruit sorter position at the substantial gainful activity level. (Doc. 13 at 9- 12). Defendant contends, however, that the ALJ could reasonably find Plaintiff's work as a fruit sorter was substantial gainful activity, but even if she could not, the ALJ made an alternate finding at step four that Plaintiff could return to her past relevant work as a hand packager. (Doc. 20 at 9).

At step four, the claimant bears the burden of showing that she does not have the RFC to engage in "past relevant work" 20 C.F.R. § 404.1520(e); 20 C.F.R. § 416.920(e); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Work experience is considered relevant if done within the last fifteen years, lasted long enough for claimant to learn it, and involved substantial gainful activity. 20 C.F.R. § 404.1565; 20 C.F.R. § 416.965; *Vertigan v. Halter*, 260 F.3d 1044, 1051 (9th Cir. 2001). If claimant can perform her past relevant work, then she is not disabled. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 416.920(e); *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001).

"Substantial gainful activity is work   activity that is both substantial and gainful." 20 C.F.R. § 404.1572; 20 C.F.R. § 416.72. Substantial and gainful activity is work done for pay or profit that

involves significant mental or physical activities. 20 C.F.R. § 404.1572(a)(b); 20 C.F.R. § 416.72(a)(b). Work can be substantial activity "even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.72(a). Work is gainful activity "if it is the kind of work usually done for pay or profit, whether or not profit is realized." 20 C.F.R. § 404.1572(b); 20 C.F.R. § 416.72(b). Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity. 20 C.F.R. § 404.1574(b)(2); 20 C.F.R. § 416.974(b)(2).

Here, Plaintiff testified that she worked for approximately six months at Wawona Frozen Foods taking "out the fruit that was not good." AR 33-34.  Plaintiff's earnings record indicated that she worked at Wawona Frozen Foods in 2002—within the 15 year past relevant work period— for "maybe six months" and earned a total of $4,518.31. AR 34, 145.  In 2002, work presumptively constituted substantial gainful activity if the monthly amount earned, on average, exceeded $780. Monthly Substantial Gainful Activity Amounts Chart, available at http://www.ssa.gov/OACT/COLA/sga.html.  Plaintiff's average monthly earnings in 2002—which is calculated by dividing her earnings by the six months that she worked—were approximately $753.05, which is below the amount which presumptively constitutes substantial gainful activity. Nonetheless, the Court finds that any error in finding that Plaintiff can return to her position as a fruit sorter is rendered harmless by the ALJ's finding that Plaintiff can return to her previous work as a hand packager, which consisted of substantial gainful activity.

To the extent that Plaintiff argues that her work as a "box sealer" does not qualify as past relevant work as a "hand packager," Plaintiff's argument is without merit. (Doc. 13 at 11).  The Dictionary of Occupational Titles ("DOT") explanation of the hand packager job description states that the job duties might involve "Nails, glues, or closes and seals containers." Packager, Hand; available at 1991 WL 687916. Furthermore, the vocational expert reviewed the vocational evidence in the record and classified Plaintiff's past relevant work as "hand packager." AR 40.  The ALJ was therefore entitled to rely on the expertise of the VE.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony" and, therefore, "no additional foundation is required").

### 4.      The ALJ Propounded a Complete Hypothetical

Finally, Plaintiff contends that the ALJ posed an incomplete hypothetical to the VE. More specifically, Plaintiff argues that the ALJ questions to the VE failed to account for her left-side weakness. (Doc. 13 at 12).

An ALJ may rely on VE testimony given in response to a hypothetical question that contains all of the limitations the ALJ found credible and supported by substantial evidence.  *Bayliss*, 427 F.3d at 1217-18.   An ALJ is not required to include limitations that are not in his findings. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

Here, no physician opined that Plaintiff's alleged weakness prevented her from performing work.  To the contrary, the State agency physicians and the consultative examiners all found that Plaintiff was capable of work activity and none found supportable manipulative limitations in the record. *See e.g. Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) ("In addition, the medical evidence, including Dr. Eather's report and Dr. Neville's report—which both found [claimant] could perform a limited range of work—support the ALJ's determination"). Because the "hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record," the "ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper." *Bayliss*, 427 F.3d at 1217.

Plaintiff has therefore failed to show that the ALJ erred by posing an incomplete hypothetical question to the VE. *See Stubbs-Danielson,* 539 F.3d at 1175-76 (a claimant fails to prove that the ALJ gave an incomplete hypothetical when the claimant simply restates his arguments challenging the ALJ's other findings concerning claimant's limitations); *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence").  As analyzed above, the ALJ's decision with respect to Plaintiff's residual functional capacity is supported by substantial evidence. Thus, the limitations included in the ALJ's hypothetical question were consistent with Plaintiff's RFC and supported by the record. Accordingly, Plaintiff is not entitled to a reversal or remand based upon this issue.

///

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Agueda Valencia.

IT IS SO ORDERED.

Dated:   **February 9, 2016**          /s/ *Barbara A. McAuliffe*

UNITED STATES MAGISTRATE JUDGE

14